### IN THE

# HIGH COURT OF ERRORS AND APPEALS

### FOR THE

# STATE OF MISSISSIPPI.

---

## JANUARY TERM, 1852.

E. P. ODINEAL, President of the Board of Police for Lowndes County, *vs.* RICHARD BARRY, Executor, et al.

A contract, the consideration of which is the preventing the diminution in the value of property, is valid in law.

The constitution of the State provides for the election in each county, of five persons " who shall constitute a board of police, a majority of whom may transact business, and which body shall have full jurisdiction over," &c. *Held,* that the board of police of a county has full jurisdiction in the location of the court-house on any lot or place within the limits designated for the seat of justice by the legislature. *Monet* v. *Jones,* 10 S. & M. 243, cited and confirmed.

It was not the intention of the legislature to declare that the court-house should forever remain upon the precise spot or locality on which it might have happened to be placed in the first instance. The town of Columbus having been designated as the permanent site for the seat of justice, it was within the power of the board of police, in the first instance, to build the court-house on any lot within the limits of that town; and a similar discretion existed, and could have been exercised by them, in the location of the new court-house. *Merrell* v. *Le Grand,* 1 How. R. 150, cited and confirmed.

No contract will be enforced in a court of justice which is founded on an immoral or an illegal consideration, or which is contrary to public policy.

This was not a proposition by the defendants to pay the members of the board of police so much, as individuals, in consideration that they would not change the site of the court-house, for such a contract would have been clearly illegal,

and could not be enforced. *Held*, that the contract, having been made by the board in their official capacity for the benefit of the county, is binding on the defendants.

The act of the legislature of 1830, which directed the commissioners to fix permanently the seat of justice of Lowndes county, authorized them to receive either donations of land or, instead, to take "propositions to pay the expenses of the public buildings in whole or in part," &c. *Held*, that there is nothing in the action of the board of police in this case which contravenes public policy; their action, accordingly, is entirely within the act authorizing the erection of a court-house.

In error from the circuit court of Lowndes county; Hon. F. M. Rogers, judge.

The opinion of the court contains a sufficient statement of the facts of the case.

*Boykin & Cruso*, for plaintiff in error.

The note sued on was given to the President of the Board of Police of Lowndes county by way of subscription, or as a donation for the erection of a court-house in the town of Columbus, the donors being citizens of the county. This was a valid consideration, they being interested in the administration of justice in the county. Donations for education or religious purposes are recoverable by suit. 20 Johns. R. 89.

A promise to pay subscription for building a state house is valid in law. 1 U. S. Dig. (Supl.) 62, § 102; 2 Root, R. 119; 9 Vermont R. 289. A promise to pay subscription to build a court-house is recoverable. 5 Ohio R. 32.

The property of defendants was benefited by the non-removal of the court-house, and this formed a sufficient consideration, which may be proved *aliunde*. 4 Pick. 71.

A contract must be clearly against public policy, and manifestly injurious to the interest of the State. Chit. Con. 664 (6th ed.)

The police court have power to build a court-house any where in the town of Columbus; they are the public agents of the county, and are responsible for their acts. The police court is a corporation, and as such might have sold the court-house lot vested in them. 1 Spears, S. C. R. 218; Walk. 328; 5 Ohio R. 129.

The board of police being a corporation, whether they violated

Odineal *v.* Barry et al.

their powers or not in assuming to build on a different lot in the same town, the makers of the note cannot contravene the want of power. They have received the benefit of the contract, and have no right to dispute the power of the board of police to build on a different lot. The board, as a corporation, is only responsible to the State for abuse of its corporate powers. The violations of its powers, or assumption of powers, cannot be collaterally inquired into in this litigation. 1 Richard. S. C. R. 281; 7 How. 508; Ib. 535; 8 S. & M. 173; 9 Mass. R. 423.

*Geo. L. Potter*, on the same side.

The removal of the court-house would have diminished the value of property owned by the defendants near the old site. On the day of the date of the notes, the board ordered that the new house be located upon the site of the old; and passed an order, accepting the notes "as a donation to the county of Lowndes, for the purpose of assisting the county to build the new court-house." This order was read in evidence by defendants. The county was solvent, and able to build.

Were the notes executed for a valuable consideration? Such a consideration is said to consist "either in some right, interest, profit, or benefit, accruing to the party who makes the contract; or some forbearance, detriment, loss, responsibility, act, or labor, on the other side;" either of these is a sufficient consideration. Story on Notes, § 186. Accordingly, promises have been enforced where parties agreed to make donations : — To erect university buildings. *University* v. *Buell*, 2 Vermont, 48. To erect a college, on condition that it remained located in the town. *Williams College* v. *Danforth*, 12 Pick. 541. To a canal fund, public. *Commissioners* v. *Perry*, 5 Ohio, 56; *State* v. *Collins*, 6 Ohio, 61. To church funds. *Fryeburg* v. *Ripley*, 6 Greenl. 442; *Collier* v. *Baptist Society*, 8 B. Monroe, 68. To preacher's salary. *Society* v. *Stone*, 7 Johns. 112; 20 Johns. 89. To build public bridge. 11 Ala. N. S. 756. To build court-houses. *Commissioners* v. *Perry*, 5 Ohio, 56; *George* v. *Harris*, 4 New Hampshire, 533. To endow colleges. *Amherst Academy* v. *Cowls*, 6 Pick. 433.

The old court-house was dilapidated; it was needful to build

anew, or to repair. The board, in its discretion, might do either. A new house, upon the old site, would benefit certain persons, and enhance the value of their property in the vicinity. Self-interest prompted them to offer a donation on condition that such new house should be built; that donation and its conditions were accepted; those persons executed their notes as such donation; and the new house was built. Here was "interest, profit, and benefit" to those persons; "responsibility, act, labor, and service" incurred, done, and performed by the board.

If it be said, the board was required by law to do this duty, and could not receive money as a consideration for discharging a public duty, we say the principle does not apply,—there was no bonus offered for the private benefit of a public officer. The board might repair or build, in its discretion, and so was not bound to erect a new court-house. By reason of the donation offered, the board was induced to build the new house, that being considered, in view of the aid offered, as best for the public interest.

Again, this was an executory consideration; a promise to pay, in consideration of a promise to perform. In such cases, payment can be enforced, on proof of performance. *Trustees* v. *Stetson*, 5 Pick. 506.

It is held, also, that the several promises of subscribers of funds, even for public purposes, are each a sufficient consideration for the other promises. You agree to pay, and I agree to pay. Each is bound on a sufficient consideration, because of the promise of the other. *Trustees* v. *Stetson*, 5 Pick. 506; *George* v. *Harris*, 4 New Hamp. 533; 6 Ib. 164. This principle must govern this case. It is true there are three notes signed by the three parties, and they are all bound, by the promises, for the whole, to the payee; but, as between themselves, each is liable to pay only one third, and, if either paid the whole, he would have contribution for a proportionate share from the others. Wade acted on this principle, and agreed to pay his share. Abbott did the same, and paid his. We say the other parties could not retract, after thus inducing Abbott to pay his share.

Again, it is held, that a compromise, or forbearance in the

exercise of an asserted claim or right, is a sufficient consideration for a promise; and the party cannot defend, by proof, that the claim was unfounded, or that no such right existed. *Cobb* v. *Arnold*, 8 Met. 403 ; *Zane* v. *Zane*, 6 Munf. 406.

In this case, the board were of opinion, that they possessed the power to locate the court-house at another point in the town of Columbus, and a valuable donation to the county was offered on condition that such change was made. It was claimed, and seems admitted, that the interests of the county would have been greatly promoted by so changing the location and accepting the offered donation. Upon the promises of these parties to pay so much money, upon condition that a new house was built on the old site, the board forbore to exercise the asserted power of removal, and the county lost the offered donation of the lots. Such a promise would be valid between private persons, and we see no reasons of public policy to invalidate it in this instance; the money promised was not as a gift or bribe to the individuals of the board, nor for their personal advantage.

Moreover, it is not at all manifest that the change would not have been legally made, even if the board had not authority. Application might have been made, and the sanction of the legislature obtained; the proof in the cause would have induced a grant of the requisite authority, had the same been presented to the legislature. The offer of these notes prevented any such application.

By the act of 1838, the boards of police have general powers, without any limitation, to levy and collect special taxes, " sufficient to build or repair any court-house or jail, or other county buildings, for the counties respectively." Hutch. 703, art. 11. The same general powers to build and keep in repair, were before vested in county courts, and then in the boards. Hutch. 708, art. 4; Ib. § 3. This general authority to build, included the power to acquire sites for the buildings. Take the swamp counties on the river; suppose court-house and site is ingulphed in the Mississippi. In such a case, the law requires the board to build anew, and they must first obtain a site. They act, in such cases, by virtue of the power to build, and they are sole judges of the necessity which may induce a change of site. They

cannot, it is true, so act when prohibited by law; and, therefore, cannot locate the court-house out of the county town, in which the statute requires it to be built. Counsel for defendants offered certain statutes in evidence relative to Lowndes county, and will insist, we presume, that the site of the old court-house was fixed, under that provision of the act requiring commissioners to "select" or "locate" "a permanent site for the seat of justice." But the record does not show that this particular lot was selected, and we venture to assert that the report, if produced, would show that the town of Columbus was selected by the commissioners. Just as the seat of justice of Tunica was, by the legislature, "removed from the town of Peyton, and permanently located at the city of Commerce." Acts, 1840, 121. The "seat of justice" being so removed, the act authorized commissioners to "contract for, locate, and proceed to the erection of a court-house," &c. The act relating to seat of justice of Monroe, provided for a ballot of the voters, the tickets to have the words "for Athens" or "for Aberdeen." Acts, 1840, 138. We think our statutes will show that the words "seat of justice" are not used in such a restricted sense as to include only the land under the court-house, as adverse counsel contend. The commissioners appointed for that purpose were required to locate "the seat of government" of the State on four certain half sections of land. How. & H. 58, § 2. It is manifest that the legislature did not consider the state house, *per se*, as the seat of government. So, for Madison county, commissioners were to acquire "not less than twenty nor more than eighty acres, for a permanent seat of justice;" they were to lay off the tract in lots and sell them, but were to designate one or more lots on which to build court-house and jail. Acts, 1833, § 1, 2, 3, 4. By the act of 1830, establishing Lowndes Co., § 6, which is not in the transcript, *it is* provided, that commissioners select a site for seat of justice of Monroe; and to that end, they were to acquire twenty to eighty acres, lay off and sell lots, reserving two acres near the centre for public buildings. Acts, 1830, p. 20, § 6 – 8. Here, the tract was considered the site of the seat of justice, not the two acre reservation. By statute, the seat of justice of Washington was

removed "to the place called Princeton;" land for public square to be procured, &c. M'Nutt's Compilation, p. 220. In this case, it will be noted the seat of justice was located before it was known on what lot the court-house would be located.

We, therefore, insist that the old court-house lot is not, necessarily, the seat of justice of Lowndes county; and there is nothing to show that such is the fact. It may be, and the probability is, that the town of Columbus is the site of the seat of justice of that county. And we take it to be clear, that the board of police had full power to build the new court-house upon any part of the site of the seat of justice of the county that they might be able to procure, for the court-house would still be upon "the site." There is no proof that the lots proposed to be donated are not within the site, and so no proof that the board contemplated a removal beyond the site; no proof that the act was not within their powers.

We deny the correctness of the doctrine, that promises to contribute for the public improvement are *nude pacts.* The recompense of the contributor is "in his share of the public good resulting from them," and he is, therefore, liable. *Amherst Academy* v. *Cowls,* 6 Pick. 433. "Contributions to a fund for any valuable object" are binding. *Trustees* v. *Stetson,* 5 Pick. 506. This is sound republican doctrine, and should be sedulously followed in a country like ours, where the highest duty of the citizen is the promotion of the public good.

If any of the foregoing propositions be correct, the charges given for the defendants, and the verdict, were wrong. See further, in brief of Boykin and Cruso.

Counsel for defendants contend that the conduct of the board was illegal, because the location was put up to the highest bidder. This is a mistake; no such thing was done. The board was intent solely to promote the best interests of the county, and considered of the offered donations only with a view to those interests. Such a course was proper, and was sanctioned by the statutes relied on by defendants.

*James T. Harrison,* for defendants in error.

Odineal *v.* Barry et al.

This was an action of assumpsit, and is founded upon one of a series of promissory notes payable to Calvin Perkins, president of the board of police for Lowndes county, and his successors in office.

The pleas are the general issue, and want of consideration. The consideration of the note was illegal and void. There was no valid and binding consideration to support the promise to pay.

In 1830, an act of the legislature was passed to establish a permanent seat of justice for the county of Lowndes. Acts, 1830, (December 1) p. 11, 12, 13. The commissioners to select a "site," &c. Ib. p. 5, § 6. And until the completion of the public buildings, the courts were to continue to sit in the town of Columbus. Ib. p. 17, § 7. And as to a permanent site, see also Acts, 1830, p. 21, § 11; January Session, p. 21, § 11; Transscript, p. 13. In 1831, an act was passed, authorizing the levy of a special tax for the completion of the court-house. Acts, 1831, p. 32. The precise site was a "fixed fact." The location was final, unless changed by the legislature. 4 Dev. & Bat. Law Rep. 534; 3 Harr. & Johns. 560. See also the testimony as to the location. But, in 1847, the police court of Lowndes assumed jurisdiction in the premises, and, when about to erect a new building, claimed not only the power to change the location, but to put the site up to the highest bidder. The power to locate seats of justice has not been confided by the constitution or laws, to the police court. *Monet* v. *Jones,* 10 Smedes & Marsh. 244.

The note sued on was given, by express agreement, to influence the decision of the court, and prevent a threatened change of location. It is dated January 5, 1847. On the 3d day of November, 1846, the court had let out the building of the new court-house. Transcript, p. 18, 19. The ground was measured and staked. The precise spot fixed upon on the lot where the old one stood. Transcript, p. 11, Hackleman's evidence.

On the 3d December, 1846, a proposal, in writing, was made to the court, to change the location for, and in consideration of, a lot worth two thousand dollars. See written petition in Transcript.

The temptation was very great; the court took the matter

Odineal v. Barry et al.

into consideration, and, in the face of a solemn protest and a legal argument made before them, concluded to change the location, unless defendants would pay two thousand dollars. These distinguished jurists, under the advice of a lawyer, came to the very wise determination, that "they would consent to take" that sum, as the minimum price, and "locate" the new court-house where it now stands; that is, suffer the location to remain where it was. See the testimony of Calvin Perkins and Hardy Stephens. Transcript, 6, 7, 8. The notes were executed to prevent the removal of the court-house. Ib. p. 9.

It was in proof, too, that the county was entirely solvent, and fully able to pay, so that even the poor pretext of necessity could not be set up in extenuation of such a system of "black mail."

The contract was without any legal consideration to support it; it was void, as contrary to public policy; and the obligation could be neither mutual nor reciprocal. To make a valid contract, it must be entered into by parties competent to contract, and be founded on a sufficient consideration. And it must be a thing lawful in itself. The promise to pay the court for the performance of an act they were obliged to execute by law, in the faithful discharge of their official duties, is illegal, against public policy, and void.

It has been held, that " an agreement, by subscription, to pay the county commissioners, who were bound by law to build a court-house, a certain sum of money, provided they would build it on a particular lot, is not binding, although they build the house on the lot mentioned. A promise to pay them for doing an act they were bound by law to do, was contrary to public policy, and void. *County Commissioners* v. *Jones*, 1 Breese, 103. And so an agreement, on the part of a turnpike corporation, to grant to individuals the privilege of passing the gate free of toll, in consideration that they would withdraw their opposition to a legislative act touching the alteration of the road, was held to be against sound policy, and prejudicial to correct and just legislation, and void. *Pingry* v. *Washburn*, 1 Aiken, 264; *Clippenger* v. *Hepbaugh*, 5 Watts & Serg. 315. And see *McGee* v. *Lindsay*, 6 Alabama Rep. 20, 21, 22, and the authorities collected; *Carrington* v. *Caller*, 2 Stewart, 175, and cases cited.

And, upon the same principle, it has been decided that, " in settling the question, whether it was proper to lay out a highway, no offer of donations by the petitioners to aid in making such a highway, ought to influence the decision of the court, nor can the payment of any sum of money by the petitioners be made the condition of laying out a highway." " And where the court has adjudged that the public good requires that a road should be laid out, such a condition annexed to the laying out is void.    And a note given for any sum, the payment of which by the petitioners is made a condition of laying out a highway, is without consideration, and void." *Dudley* v. *Chilley*, 5 New Hamp. Rep. 558.    " No offer of donations, by petitioners or others, to aid in making a highway, should influence the court in making their decision ; and a note given, under such circumstances, is without consideration, and void." *Dudley* v. *Butler*, 10 New Hamp. R. 281.

In the present case, the police court went still one step farther, and actually set up their decision to the highest bidder. Property to the amount of two thousand dollars was openly offered, in writing, to influence the decision of the court, and induce them to do an illegal act, in removing the court-house from the place where it was fixed by law.    It was concluded to take the bid as the best and highest offered, with this proviso, that the court would consent to take two thousand dollars, and let the location remain where it was.    The location was a matter of traffic, like " an ox, or an ass, or any thing that is thy neighbour's."    The two thousand dollars was the express condition of the adjudication of the court.

It is contended by the present learned counsel of the plaintiffs, that the defendants were benefited by the agreement, and, therefore, the consideration of the contract is a good one.    The property of the defendants would have been decreased in value by the removal; but the property of no one could be increased in value by merely permitting the location to remain where it was.    But the consideration of a contract must be legal, and not merely beneficial or prejudicial to either party.    *Merrell* v. *Legrand*, 1 Howard, 152;  Story on Promissory Notes, p. 200, § 183, &c. &c., p. 201, § 184, 186, 187;  Story on Contracts,

Gratuitous Promises, § 453; *Boutell* v. *Cowdin,* 9 Mass. R. 254; American Jurist, No. 42, vol. 21, p. 282; *Phillips Limerick Academy* v. *Davis,* 11 Mass. R. 113; *Bridgewater Academy* v. *Gilbert,* 2 Pick. R. 579; *Howes* v. *Dana,* 12 Mass. R. 190; *Trustees of Farmington Academy* v. *Allen,* 14 Mass. R. 172; *Trustees of Amherst Academy* v. *Cowls,* 6 Pick. R. 427.

This contract for letting out the building of the court-house, price and all, was agreed on before this demand of tribute; the promise by defendants did not induce the contract, or any liabilities and engagements. The breach of promise did not enlarge, or render the engagements of any one more burdensome, supposing the promise to be lawful.

As a gratuitous promise, the note is void for want of a valid consideration.

After the notes were executed, the court had the same spread out upon the records, reciting that they " were a donation to the county, for the purpose of assisting the county to build the new court-house."

The pleasing discovery has also been made, that this august body, the police court, is a *quasi* corporation, and that, as such, we cannot set up any defence to an illegal or void contract against it; that to plead a total want of consideration to support a contract, is to attack its powers collaterally.

The note sued on is made payable to Calvin Perkins, president, &c., and his successors in office; and Odineal brings the suit as his successor.

We do not deny but that a note may be made payable to the president and his successors in office, or that the successor can maintain suit in his own name; but we say the contract itself is not binding in law; that it is contrary to public policy; that it wants a legal and binding consideration to support it; that it is not reciprocal, and wants mutuality. It is at the contract, and not at the supposed corporation, that we strike.

And I am yet to learn that the police court is a *quasi* corporation, as understood by plaintiffs; and that it has the power to hold and possess real and personal estate in a corporate name, to locate court-houses, deal in exchange, or traffic in judicial decisions.

Odineal *v.* Barry et al.

Mr. Justice YERGER delivered the opinion of the court.

Plaintiff in error sued the defendants upon a promissory note, executed by Craven and Wade, payable to Calvin Perkins, president of the board of police of Lowndes county, and his successors in office. The defendants relied upon want of consideration and illegality of consideration, as a defence. The facts are substantially these. The court-house in Lowndes county had become old and dilapidated, and the board of police had determined to build a new one. Certain citizens of Columbus petitioned the board to build the new court-house on a different lot in a different part of the town of Columbus from that on which the old one was situated, and proposed to make a donation to the county of a lot for that purpose. The lot proposed to be donated was very eligible for a court-house, more so than that upon which the old one was situated; and the board was inclined to accept the proposition, and to change the location. Craven and Wade, and certain other persons owning property near the old court-house, which would have been diminished in value by the removal of it to another part of the town, proposed to pay the county two thousand dollars towards the erection of the new building, if the board of police would build it on the site of the old court-house. This proposition the board accepted, and did build it on the same lot. The note sued on was given in consideration of this action of the board, and in part performance of the contract to pay them therefor. It is also admitted, that the property of the defendants would have been diminished in value if the court-house had not been so erected, and had been built on the other *lot,* to which it was proposed to remove it.

Was there a sufficient consideration for the note? Judge Story lays down the rule, that a sufficient consideration for a promissory note may consist "either in some right, interest, profit, or benefit accruing to the party who makes the contract, or some forbearance, detriment, loss, responsibility, act, or labor on the other side." Story on Promissory Notes, § 186.

Does the consideration in this case come within the above definition? It is admitted, that the removal of the court-house from the old site to that proposed to be given to the county,

Odineal *v.* Barry et al.

would have diminished the value of the property of defendants. It is also admitted, that in consideration of the undertaking of defendants, the board of police forebore to remove the court-house, declined accepting the donation of the lot proposed to be given them in a different part of the town, and built on the site of the old building. Here there was a benefit to the defendants, in preventing a diminution in the value of their property, and a loss to the board of police of the lot proposed to be given to it, on condition that they would build the new court-house upon it. This benefit on the one side and loss on the other, we think constitute a sufficient consideration for the note.

But, it is said, however true this principle of law may be generally, yet it is not applicable to this case, because the board of police had no power to change the site of the court-house, but were bound by law to erect the new court-house on the same lot where the old one had stood; and the various acts of the legislature providing for the establishment of a permanent seat of justice and the building of a court-house for Lowndes county, have been cited and commented upon, to sustain this position. We do not think they warrant the construction which counsel have placed upon them.

The constitution provides for the election, in every county, of five persons, " who shall constitute a board of police; a major-ity of whom may transact business; which body shall have full jurisdiction over roads, highways, ferries, and bridges, and all other matters of county police." Constitution, Art. 4, § 20. Under this clause in the constitution, and the acts of the legis-lature passed in pursuance of it, it has been held, that the board of police have power to build or repair court-houses; and the legislature, by the act of 1838, conferred upon them the power to levy and collect special taxes " sufficient to build or repair any court-house or jail, or other county building, for their counties respectively. Hutch. Code, art. 11, p. 703. Also, see Hutch. Code, 708–710; 10 S. & M. 243; 9 Ib. 77.

It is true, that this court held, in the case of *Monet* v. *Jones*, 10 S. & M. 243, that the boards of police had no power to locate the seats of justice, and that the power to do so remained

in the legislature.  We do not mean to controvert the soundness of this decision.   But, in making it, we do not understand the court to have intended to decide, or even to intimate a doubt, that the boards of police of the respective counties had not full power to repair and erect court-houses in their several counties. This power being conceded to them, the question arises, in what part of the county must the court-house be built?   Of course it must be erected within the limits of the seat of justice designated by the legislature.   But on what particular lot, or in what particular part of the seat of justice, is a matter which is left entirely and exclusively to the discretion of the board of police ; and over that matter they have full jurisdiction.   Upon looking at the various acts in relation to the seat of justice for Lowndes county, we have come to a different conclusion from the counsel for the defendants.   We are satisfied, when the legislature speaks of " a permanent seat of justice " being established, it was intended by them that the commissioners should designate a certain tract or quantity of land within the limits of which the court-house, jail, and other county buildings should be placed; but we cannot, for an instant, suppose that it ever was their intention to declare that the court-house should forever remain upon the precise spot or locality within those limits on which it might have happened to be placed in the first instance.   On the contrary, we think, when the town of Columbus was designated as the permanent site for the seat of justice of Lowndes county, it was within the discretionary power of the board of police, in the first instance, to build the court-house on any lot within the limits of that town ; and we believe a similar discretion existed and could have been properly exercised in regard to the location of the new court-house.

This brings us to the consideration of the last point, which we deem it necessary to notice in this opinion.   Was the consideration on which this promissory note was given, illegal? We do not think so.   We recognize fully the doctrine of this court in the case of *Merrell* v. *Legrand*, 1 Howard, R. 150, that the consideration of a contract must not be merely of benefit to one party, or prejudice to the other ; but that the benefit or prejudice must arise from a legal, and not an illegal or immoral

Odineal *v.* Barry et al.

act.   No contract will be enforced in a court of justice which is
founded on an illegal or immoral consideration, or which is
contrary to public policy.   In this case, it is not pretended that
there was any express law prohibiting the board of police from
making this contract, or that it was a contract immoral in itself;
but it is said it was a contract against public policy, and, there-
fore, should not be enforced.   What principle of public policy
does it violate?   The members of the board of police, as indi-
viduals, will not receive any portion of the money for which the
note was given.   At the time of the contract it was not intended
or expected that they should receive it.   It was not a proposi-
tion by the defendants to pay them so much as individuals, in
consideration that they would not change the site of the court-
house.   If it had been, it would have been clearly illegal, and
could not have been enforced.   But the contract was made by
them in their official capacity, for the benefit of the county.
When collected, the money will become the property of the
county, and be under its direction and control, applicable to
any purpose that may be deemed beneficial, or promotive of its
interests.   By looking into the act of the legislature of 9th
December, 1830, it will be seen, that the commissioners who
were directed to fix the seat of justice permanently, were author-
ized to receive either donations of land from individuals for that
purpose, or if, in their discretion, they believed it would conduce
more to the interests of the county, they were authorized to take,
instead of donations of land, propositions from individuals, or
bodies politic or corporate, either to pay the expenses of the
public buildings in whole or in part," &c.   It will thus be seen,
that so far from the action of the board of police contravening
the public policy on this subject, it perfectly accords and entirely
harmonizes with that policy as indicated in the act authorizing
their predecessors to erect the first court-house in Lowndes
county.   Inasmuch as, in our opinion, the board of police had
discretionary power to change the location or site of the court-
house to any other lot in the town of Columbus which it con-
ceived conducive to the true interests of the county, it is diffi-
cult to imagine a reason why it might not, with equal propriety,
take into consideration the question, whether the removal of the

court-house for the donation of land in another part of the town, or its erection on the old site for the payment of money by the defendants, would most conduce to the interests of the county? The donation of the land and the removal of the court-house would have enabled the board to have sold the lot on which the old court-house stood, and applied the money towards erecting the new building. The payment of the money by the defendants could have been likewise so applied; and, in either instance, the burden of taxation on the county would have been lessened *pro tanto.* We, therefore, think that it was a very fair case, about which the board might exercise its discretion without contravening any principle of public policy. In our opinion, the circuit court erred in deciding that the consideration of the note was illegal and insufficient; and, therefore, direct that the judgment be reversed, and the cause remanded for further proceedings in accordance with this opinion.

Judgment reversed; and cause remanded for further proceedings.